## Carson Estate

*Jerome B. Weinstein* of *Fox, Rothschild, O'Brien & Frankel,* for accountants.

C. KLEIN, *A. J.,* June 3, 1975—Article Second of the will of decedent bequeathed the sum of $4,000 in trust to apply the net income to the care and maintenance of the vault, the granite slab covering the vault, and the ground adjacent to the vault of decedent's family burial place in the cemetery of All Saints' Church, Torresdale, Philadelphia, Pa.

The reason for filing the present account is the death on October 19, 1974, of Moreau D. Brown, one of the trustees. At the audit, Mr. Weinstein, on behalf of the accountants, suggested that it would be more efficient for the operation of this trust if the surviving co-trustees resigned and All Saints' Church, a not-for-profit corporation, was appointed substituted trustee. With this in mind, the Fidelity Bank and Jerome B. Weinstein, surviving co-trustees, have, by writings dated May 1 and May 5, 1975, respectively, submitted their resignations. Also annexed is the consent of All Saints' Church to serve as substituted trustee.

Mr. Weinstein informed the court that All Saints' Church has received, from other sources, similar funds for which it serves as trustee, which funds are managed for it by First Pennsylvania Bank on a contractual basis.

All parties in interest are stated to have received notice of this audit. Proof of compliance with Rule 5, section 5, of the Supreme Court Orphans' Court Rules relating to notice to the Attorney General of the Commonwealth of Pennsylvania in cases involving charitable gifts, is annexed.

Article III, §315, of the NonProfit Corporation Law, Act of May 5, 1933, P.L. 289, as amended, 15

P.S. §7315, which authorized a religious corporation maintaining a burial ground to be appointed trustee for cemetery trusts, was repealed by sec. 5 of the Act of November 15, 1972 (No. 271) secs. 101, et seq., 9 Pa. C.S. §§101, et seq. The subject matter of the repealed section, insofar as it is pertinent here, may be found in 9 Pa. C.S. §309(a), which reads in part as follows:

"Every incorporated cemetery company* . . . may be appointed the original trustee, or, when for any reason a vacancy may occur in a trusteeship, substituted or successor trustee, and as such may receive devises, or gifts, the principal of which is to be held, in trust, in perpetuity or for a lesser period of time, for the care, maintenance, preservation, ornamentation or benefit of its cemetery, or the cemetery lots therein, upon giving its own bond without surety. The directors of any such corporation are hereby made trustees of any such funds so deposited or received, and neither such funds nor the income derived therefrom shall be used by such trustees for any purpose other than the purpose for which they were deposited, devised, donated, or otherwise acquired. The directors of such corporation shall cause accurate accounts to be kept of such trust funds separate and apart from the other funds of the corporation. Any such corporation may combine and merge the principal of two or more such trust funds and any funds so set aside in an omnibus fund for the purposes of investment of the same."

Thus, there is statutory authority to appoint All

---

*9 Pa. C.S. §101 defines "Cemetery company" as "Any person who offers or sells to the public the ownership, or the right to use, any cemetery lot."

Saints' Church substituted or successor trustee. There remains the question whether to do so in this case would do violence to testatrix's intentions.

The reported cases which deal with this problem are few in number and far from consistent in result. Most of them are concerned with combining small cemetery trusts to be administered by a cemetery company or association. Perhaps the best reasoned of these decisions is Judge Taxis' opinion in Sundry Cemetery Trusts—Termination, 22 Fiduc. Rep. 171 (1972), permitting a corporate trustee of 108 small cemetery trusts to resign and awarding the funds to the various cemetery companies where the lots were located as substituted trustees. At pages 176-77, he quotes with approval the following language from Brock Cemetery Trusts Case, 29 D. & C. 2d 263 (1962), which seems to be especially applicable to the facts in this case:

"Lengthy discussion of the aims of the parties before the court in this proceeding is unnecessary. Judicial notice may be taken of what admittedly is fact, namely, the administration of trust funds for perpetual care of individual cemetery lots has proved unsatisfactory over the years where the funds are held and administered by trustees limited in the use of income to a lot here and there. A more satisfactory way is to merge the trust funds into one common fund to be administered by a responsible cemetery association organized and obligated to care for and maintain the entire cemetery rather than an individual lot here and there. Cemetery trusts have become unpopular with corporate trustees primarily because of the difficulties encountered in caring for individual lots here and there and because the compensation generally does not

measure up to the value of the services performed . . ."

Judge Taxis also discusses the problems inherent in the administration of small cemetery trusts and how the courts of this Commonwealth have dealt with them, without attempting to reconcile the inconsistencies in the reported cases. In our view, no two cases are alike and, rather than look for a precedent with facts similar to ours, we will be guided primarily by what will most effectively accomplish the purpose intended by the testatrix.

The auditing judge is satisfied that All Saints' Church will administer this trust in a satisfactory manner. Accordingly, the resignations of the Fidelity Bank and Jerome B. Weinstein as trustees are accepted to be effective upon the transfer of the principal and all accumulated income to All Saints' Church. . . .

And now, June 3, 1975, the account is confirmed nisi.